STATE v. MARY BENTON BENTON

No. 27

(Filed 18 June 1969)

**1. Criminal Law § 10;    Homicide §§ 2, 12;    Indictment and Warrant § 11—    accessory before the fact of murder — sufficiency of indictment**

In this prosecution of defendant as an accessory before the fact to the murder of her husband, judgment must be arrested on the ground that the bill of indictment does not charge defendant with the crime for which she was tried, convicted and sentenced, or with any criminal offense,

where the indictment charges that defendant became an accessory before the fact to the murder of her husband "by counseling, procuring or commanding Raymond Epley to commit a felony, to wit: kill and murder Raymond Epley," and that Raymond Epley consequently murdered defendant's husband.

**2. Criminal Law § 13— jurisdiction — valid indictment**

A bill of indictment is insufficient to confer jurisdiction unless it charges all essential elements of a criminal offense.

**3. Criminal Law § 127— arrest of judgment — defective indictment**

Judgment must be arrested where no crime is charged in the warrant or bill of indictment upon which defendant has been tried and convicted.

**4. Indictment and Warrant § 9— charge of crime**

A charge in the bill of indictment must be complete in itself, and contain all of the material allegations which constitute the offense charged.

**5. Criminal Law § 127; Indictment and Warrant § 9— defective indictment — consideration of allegations in warrant**

Allegations in the warrant on which defendant was originally arrested cannot be used to supply a deficiency in the bill of indictment.

**6. Criminal Law § 127; Indictment and Warrant § 9— defect in indictment not cured by evidence**

Only what appears on the face of the record proper may be considered in determining whether a judgment should be arrested, and the evidence, not being a part of the record proper, cannot supply a fatal defect or omission in a bill of indictment.

**7. Criminal Law § 127— effect of arrest of judgment**

The legal effect of arresting the judgment because of a fatally defective indictment is to vacate the verdict and sentence of imprisonment, and the State, if so advised, may proceed against defendant upon a sufficient bill of indictment.

**8. Criminal Law § 10— accessories before the fact — elements of offense**

Elements which must concur in order to justify conviction of one as an accessory before the fact are: (1) that he advised and agreed, or urged the parties or in some way aided them, to commit the offense, (2) that he was not present when the offense was committed, and (3) that the principal committed the crime.

**9. Criminal Law § 10— accessories before the fact — proof of guilt of principal**

Although under G.S. 14-5 an accessory before the fact can be indicted and tried independently of the principal felon, the guilt of the principal must in all cases be alleged and proved to the same degree of certainty as if he himself were on trial, that is, beyond a reasonable doubt.

**10. Criminal Law § 10; Homicide §§ 2, 21— accessory before fact of murder — duty of State to prove guilt of principal**

In order to convict defendant as an accessory before the fact to the

murder of her husband, it is incumbent upon the State in defendant's trial to satisfy the jury from the evidence beyond a reasonable doubt that the principal felon named in the indictment murdered defendant's husband.

**11. Criminal Law § 10;   Homicide §§ 2, 23——   accessory before the fact of murder — instructions — duty of State to prove guilt of principal**

In this prosecution of defendant as an accessory before the fact to the murder of her husband, the trial court erred in giving the jury instructions which implied or assumed "the crime" was committed when defendant "was not present" and that "the crime was committed" by the principal felon named in the indictment, and in failing to instruct the jury that, in order to justify conviction of defendant as an accessory before the fact, the State was required in this case to satisfy the jury from the evidence beyond a reasonable doubt that the principal felon named in the indictment murdered defendant's husband.

APPEAL by defendant from *Beal, Special Judge,* November 11, 1968 Special Criminal Session of BURKE.

Defendant was tried on a bill of indictment returned by the grand jury at February 1968 Session, viz.:

"The jurors for the State upon their oath present, that Mary Benton Benton late of the County of Burke, on the 27 day of November, in the year of our Lord one thousand nine hundred and Sixty-seven, with force and arms, at and in the county aforesaid, unlawfully, willfully, and feloniously be and become an accessory before the fact to the murder of Marshal Adam Benton, *by counseling, procuring, or commanding Raymond Epley to commit a felony, to wit: kill and murder Raymond Epley,* and in confirmation of said counseling and procuring or commanding of the said Raymond Epley, he, the said Raymond Epley, on or about the 27th day of November, 1967, did unlawfully, willfully and feloniously, with premeditation and deliberation, and with her malice aforethought, kill and murder the said Marshall Adam Benton, in violation of General Statutes of North Carolina Section 14-5, against the form of the statute in such case made and provided and against the peace and dignity of the State." (Our italics.)

Defendant pleaded not guilty and was placed on trial during the second week of the May 27, 1968 Session. The record before us shows that the court, on June 5, 1968, withdrew a juror and declared a mistrial "due to the critical degree of the pregnancy of the defendant."

At defendant's trial at November 1968 Special Criminal Session, the jury returned a verdict of "guilty." Thereupon, defendant moved in arrest of judgment and excepted to the court's denial of her mo-

tion. The court pronounced judgment that the defendant be confined in the State Prison for the term of her natural life.

Defendant excepted and appealed, assigning as error, *inter alia,* the court's denial of her motion in arrest of judgment.

*Attorney General Morgan and Deputy Attorney General Moody for the State.*

*Byrd, Byrd & Ervin for defendant appellant.*

BOBBITT, J.

[1]  Fidelity to sound legal principles requires that the judgment be arrested on the ground the bill of indictment does not charge defendant with the crime for which she was tried, convicted and sentenced, or with any criminal offense.

The bill alleges explicitly and fully that Raymond Epley murdered Marshall Adam Benton on or about November 27, 1967. It alleges that defendant became an accessory before the fact to the murder of Marshall Adam Benton "by counseling, procuring, or commanding Raymond Epley to commit a felony, to wit: kill and murder Raymond Epley," and that Raymond Epley murdered Marshall Adam Benton "in confirmation of said counseling and procuring or commanding of the said Raymond Epley."

The warrant on which defendant was arrested and the evidence at trial indicate clearly it was intended that defendant be charged as an accessory before the fact to the murder of Marshall Adam Benton by Raymond Epley *by counseling, procuring, or commanding* Raymond Epley to kill and murder Marshall Adam Benton. Unfortunately, the bill of indictment does not contain this *essential allegation.* Decision must be based on what the bill of indictment in, fact charges, not on what the draftsman or grand jury may have. intended. Therefore, under the well-settled legal principles stated below, the bill of indictment was insufficient to vest the court with jurisdiction to try defendant.

[2, 3]  A bill of indictment is insufficient to confer jurisdiction unless it charges all essential elements of a criminal offense. *State v. Stokes,* 274 N.C. 409, 163 S.E. 2d 770, and cases cited; *State v. Morgan,* 226 N.C. 414, 38 S.E. 2d 166, and cases cited. "(W)here no crime is charged in the warrant or bill of indictment upon which the defendant has been tried and convicted the judgment must be arrested." *State v. Morgan, supra,* and cases cited. Accord: *State v. Fowler,* 266 N.C. 528, 146 S.E. 2d 418.

**[4-6]** "A charge in a bill of indictment must be complete in itself, and contain all of the material allegations which constitute the offense charged." *State v. Guffey,* 265 N.C. 331, 333, 144 S.E. 2d 14, 17. As held in *Guffey,* allegations in the warrant on which defendant was originally arrested cannot be used to supply a deficiency in the bill of indictment. Accord: 42 C.J.S., Indictments and Informations § 108, p. 990. Only what appears on the face of the record proper may be considered in determining whether a judgment should be arrested. *State v. Gaston,* 236 N.C. 499, 73 S.E. 2d 311. Accord: *State v. Stokes, supra.* Evidence, which is not a part of the record proper, cannot supply a fatal defect or omission in a bill of indictment.

The bill of indictment under consideration is fatally defective. It does not charge defendant with the murder of Marshall Adam Benton. Nor does it charge that she counseled, procured or commanded Raymond Epley to murder Marshall Adam Benton. The verdict relates to the accusation in the bill of indictment. The allegations thereof being insufficient to charge a criminal offense, the judgment predicated on said indictment and verdict must be arrested.

**[7]** The legal effect of arresting the judgment is to vacate the verdict and sentence of imprisonment. The State, if it is so advised, may proceed against the defendant upon a sufficient bill of indictment. *State v. Fowler, supra.*

The present case demonstrates the need for great care in the drafting of pleadings in criminal actions and for close scrutiny thereof prior to the arraignment and trial of the accused. "(I)t is impossible to overmagnify the necessity of observing the rules of pleading in criminal cases. The first rule of pleading in criminal cases is that the indictment or other accusation must inform the court and the accused with certainty as to the exact crime the accused is alleged to have committed." Ervin, J., in *State v. Thorne,* 238 N.C. 392, 78 S.E. 2d 140.

Our reluctance to arrest judgment on account of the defect in the bill of indictment is assuaged by the realization that, even if the bill of indictment had alleged what the draftsman intended, defendant would be entitled to a new trial on account of error in the court's instructions to the jury. Since it is probable there will be a new trial on a proper bill of indictment, we deem it appropriate to call attention to a deficiency in the court's charge.

G.S. 14-5 provides in part: "If any person shall counsel, procure or command any other person to commit any felony, whether the same be a felony at common law or by virtue of any statute, the

person so counseling, procuring or commanding shall be guilty of a felony, and may be indicted and convicted, either as an accessory before the fact to the principal felony, together with the principal felon, or after the conviction of the principal felon; or he may be indicted and convicted of a substantive felony, whether the principal felon shall or shall not have been previously convicted, or shall or shall not be amenable to justice, and may be punished in the same manner as any accessory before the fact to the same felony, if convicted as an accessory, may be punished. . .. ."

[8]     "There are several elements that must concur in order to justify the conviction of one as an accessory before the fact: (1) That he advised and agreed, or urged the parties or in some way aided them, to commit the offense. (2) That he was not present when the offense was committed. (3) That the principal committed the crime." 22 C.J.S., Criminal Law § 90, p. 269. This statement was quoted with approval by Moore, J., speaking for this Court, in *State v. Bass*, 255 N.C. 42, 51, 120 S.E. 2d 580, 587.

[9]     Although under G.S. 14-5 an accessory before the fact can be indicted and tried independently of the principal felon, "the guilt of the principal must in all cases be alleged and proved." 1 Wharton's Criminal Law and Procedure (Anderson) § 116, p. 251. "In order to warrant the conviction of an accessory, the guilt of the principal must be established to the same degree of certainty as if he himself were on trial, that is, beyond a reasonable doubt." 22 C.J.S., Criminal Law § 105, p. 296.

It would seem more appropriate if allegation and proof "(t)hat the principal committed the crime" were stated as the *first* rather than the *third* element to justify the conviction of one as an accessory before the fact. Compare statement of essential elements that must concur in order to justify the conviction of one as an accessory after the fact. *State v. Williams*, 229 N.C. 348, 49 S.E. 2d 617; *State v. Potter*, 221 N.C. 153, 156, 19 S.E. 2d 257, 259.

After charging the jury substantially in accordance with the quoted statement from Corpus Juris Secundum, the court instructed the jury: "(I)f you find from the evidence and beyond a reasonable doubt that the defendant, Mary Benton Benton, on or about 27th day of November 1967, did counsel, advise, encourage, warn, instruct, command, procure the principal, Raymond Epley, to kill and slay Marshall Benton on the 27th day of November 1967, and that she was not present at the time that the crime was committed, and if you so find beyond a reasonable doubt, it is your duty to return a verdict of guilty against the defendant, Mary Benton Benton."

**[10]**    Prerequisite to the conviction of defendant as an accessory before the fact, it was incumbent upon the State *in this case* to satisfy the jury from the evidence beyond a reasonable doubt that Raymond Epley murdered Marshall Adam Benton. There was plenary evidence from which the jury could so find. However, the court's instructions were deficient. They imply or assume "the crime" was committed when defendant "was not present" and that "the crime was committed" by Raymond Epley. There were no instructions as to the elements of the crime of murder. Nor were there instructions purporting to apply the law relating to murder to the facts in evidence. There should have been, but was not, an instruction to the effect that, in order to justify the conviction of defendant as an accessory before the fact, the State was required *in this case* to satisfy the jury from the evidence beyond a reasonable doubt that Raymond Epley murdered Marshall Adam Benton. Compare *State v. Jackson,* 270 N.C. 773, 155 S.E. 2d 236, where, in the separate trial of the defendant as a principal in the second degree to armed robbery, it was held incumbent upon the State to establish beyond a reasonable doubt by evidence *in that separate trial* the guilt of those referred to as principals in the first degree.

The court may have considered that the testimony of Raymond Epley and the proffer of stipulations by defendant's counsel rendered unnecessary the instructions we hold should have been given. Raymond Epley testified, and defendant's counsel proffered a stipulation, to the effect that Raymond Epley had been indicted for the murder of Marshall Adam Benton on November 27, 1967; that, at May 12, 1968 Session, he had tendered, and the State had accepted, a plea of guilty of murder in the second degree; and that, based on said plea, he had been sentenced to imprisonment for a term of not less than twenty nor more than thirty years. Too, defendant's counsel, incident to their objections to the introduction of photographs of the deceased, proffered stipulations (1) "that the deceased died as a result of a gunshot wound from the bullet that (had) been introduced as State Exhibit (1)," and (2) that Raymond Epley "did kill Marshall Benton, which death resulted from a gunshot wound that occurred on November 27, 1967." Assuming, without deciding, that defendant's counsel, without defendant's full understanding and express approval, had authority to stipulate facts of which neither they nor their client had personal knowledge, that is, that Raymond Epley did kill Marshall Adam Benton, the proffered stipulations fall short of a judicial admission that Raymond Epley *murdered* Marshall Adam Benton.

It is noteworthy that, although G.S. 14-17 provides that a person who is convicted or pleads guilty to murder in the second degree "shall be punished with imprisonment of not less than two nor more than thirty years in the State's Prison," G.S. 14-6 provides that a person who is convicted as an accessory before the fact of the crime of murder, whether first degree or second degree, "shall be imprisoned for life in the State's Prison." See *State v. Mozingo,* 207 N.C. 247, 176 S.E. 582.

Although we have discussed a deficiency in the charge, decision on this appeal is that, for the reasons set forth in the first portion of this opinion, the judgment of the court below must be and is hereby arrested.

Judgment arrested.