STATE OF NORTH CAROLINA v. SHARON RANDOLPH AND REGINALD PHIL SANDERS

No. 146A84

(Filed 6 November 1984)

### 1. Robbery § 4.3 — continuing threat of use of firearm — evidence sufficient

Defendants' conduct rose to the level of a continuing threat of the use of a firearm sufficient to support a conviction for armed robbery where there was a display of a firearm which induced the victim to acquiesce to the defendants' demands, and where on several occasions the defendants indicated that they would use the weapon if the victim resisted. G.S. 14-87.

### 2. Rape and Allied Offenses § 5; Criminal Law § 9.1 — first degree rape — aiding and abetting — evidence sufficient

The evidence was sufficient to convict the defendant of first degree rape and first degree sexual offense as an aider and abettor where the evidence tended to show that defendant had previously threatened the victim with a gun, that defendant was driving when a codefendant got into the back seat with the victim, that defendant drove down an isolated dirt road and stopped, that defendant remarked that she "had to see this" when the victim began to perform fellatio on the codefendant, that defendant moved the victim's legs around when the codefendant was raping the victim, and that the victim was forced to suck defendant's breast while the codefendants had intercourse.

### 3. Rape and Allied Offenses § 5 — first degree sexual offense — evidence sufficient

There was sufficient evidence to convict a defendant of first degree sexual offense under G.S. 14-27.4 where the evidence clearly supported a finding that a codefendant aided and abetted defendant, and where the evidence showed a concert of action between the codefendants, so that there can be no doubt that defendant was aware of the fact that the codefendant had used a gun to abduct the victim and continued to threaten her with the gun.

### 4. Criminal Law § 102.8 — failure to testify — prosecutor's comment — permissible

The prosecutor did not comment impermissibly on defendants' failure to testify where any reference to the failure to testify was so brief as to make improbable any contention that the jury inferred guilt from the failure of defendants to testify, and where the defendants failed to promptly object and decided against a curative instruction when this was suggested by the trial court. G.S. 8-54.

### 5. Indictment and Warrant § 3; Criminal Law § 13 — grand jury — no jurisdiction over crimes in another county

Where all of the evidence tended to show that a kidnapping and larceny occurred in Cumberland County, a Wake County Grand Jury had no jurisdiction to indict defendants for those crimes. Furthermore, statements in an indictment naming the county where the crime allegedly occurred establish *prima facie jurisdiction* and may be challenged at any time as stated in G.S.

15A-952(2), not just in a timely motion to dismiss for improper venue under G.S. 15A-135.

**6. Rape and Allied Offenses § 6.1— instruction on second degree sexual offense not required**

Defendant was not entitled to a jury instruction on second degree sexual offense where there was no evidence which would support a finding of guilt of second degree sexual offense.

**7. Indictment and Warrant § 13.1— bill of particulars—denial—no abuse of discretion**

Defendant did not show prejudicial error in the denial of his motion for a bill of particulars where the warrants and indictments adequately informed defendant that the crimes allegedly occurred on July 13 and 14 in Wake County, and where defendant failed to present any evidence to rebut the charges and made no showing as to how his preparation and conduct of the case was impaired by the denial of the motion. G.S. 15A-925(c).

APPEAL by the defendants from the judgment of *Judge John C. Martin*, entered October 28, 1983 in Superior Court, WAKE County.

The defendants were tried on indictments charging each with first degree rape, first degree sexual offense, first degree kidnapping, armed robbery and felonious larceny. The defendants pleaded not guilty to all charges. A jury found them guilty of all charges. The trial court sentenced the defendants to life imprisonment for the rape convictions and life imprisonment for the sexual offense convictions. The trial court consolidated the kidnapping, armed robbery and felonious larceny convictions and sentenced each defendant to twenty-five years. The defendants appealed the rape and sexual offense convictions as a matter of right under N.C.G.S. 7A-27(a). On April 19, 1984, the Supreme Court allowed the defendants' motions to bypass the Court of Appeals on the defendants' appeal in the kidnapping, armed robbery and felonious larceny cases. Heard in the Supreme Court October 10, 1984.

*Rufus L. Edmisten, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Irving Joyner for defendant appellant Randolph.*

*Adam Stein, Appellate Defender, by Lorinzo Joyner, Assistant Appellate Defender, for defendant appellant Sanders.*

MITCHELL, Justice.

On appeal the defendants bring forward several assignments of error. We conclude that no reversible error was committed at trial, but because the Wake County Grand Jury was without jurisdiction to indict the defendants for the kidnapping and felonious larceny, judgment must be arrested in those cases. In addition since the trial court consolidated the armed robbery convictions with the kidnapping and larceny convictions for sentencing, we vacate the sentences in the armed robbery cases and remand them for resentencing.

The State's evidence tended to show that on July 13, 1983, the victim was living in Fayetteville, North Carolina. On that date she drove her father's automobile to the post office in order to post some mail and buy stamps. As she was leaving the post office, the victim was approached by a black female who was identified at the trial as the defendant Sharon Randolph. Randolph asked the victim where she was going and stated that she needed a ride to her place of employment. The victim thought she recognized the location Randolph described and offered her a ride.

During the course of the drive, Randolph indicated that she had changed her mind and asked the victim to take her to the boardinghouse where she was staying. After driving a bit further, the victim stopped to allow Randolph to get out of the car. Randolph got out of the car, but then turned around and displayed a gun. She told the victim "not to try anything funny" and proceeded to reenter the car. Randolph instructed the victim to drive and gave her specific directions leading back to an area near the post office, where Randolph told the victim to pull into a driveway. A black man, identified at trial as the defendant Reginald Sanders, was nearby. Randolph motioned for him to come over to the car. Sanders entered on the driver's side and began to drive. At that time, the victim was in the front seat between the two defendants.

As they were driving, the victim was instructed to close her eyes and was told by Randolph that if she opened them "it will be the last time." After driving for about thirty minutes, they stopped for gas. As Sanders pumped gas, Randolph told the victim that she still had the gun and warned her not to "try anything." Sanders returned to the car, and they continued to drive.

Sometime later they stopped, and the victim was ordered to get into the back seat.

After driving another hour or so, the victim saw the Wake Advancement Center and realized that they were in Wake County. Sometime later they entered the Lion's Park and stopped. The defendants proceeded to drink some whiskey from paper cups. They then left the park with Randolph driving.

Eventually Sanders instructed Randolph to stop the car on a dirt road near Eagle Crest Golf Course. Sanders then got into the back seat with the victim and ordered her to disrobe. He told her that she had five minutes to stimulate him any way she could. The victim proceeded to manually massage his penis. She was then forced to perform fellatio on Sanders. Sanders then proceeded to rape the victim. While the rape was occurring, Randolph moved the victim's legs around in an effort to aid penetration. The victim stated that she did not resist the attack by struggling because she had been told that she would not be harmed as long as she complied with the defendants' demands and because of Randolph's gun.

After Sanders had sexual intercourse with the victim, Randolph got into the back seat. She and Sanders then had intercourse. During this time, the victim sat in the floorboard behind the front seat. While Sanders and Randolph were having intercourse, Randolph told the victim to suck her breast. The victim complied. Afterwards, the victim was allowed to dress and told to lie back and go to sleep.

The defendants then left the area of the golf course. Earlier Randolph had discovered the victim's Wachovia Teller II card. After locating a bank, Randolph asked the victim what her code number was. The victim told her the number. Randolph went up to the teller machine while Sanders stayed in the car with the victim. At that time Sanders made a statement to the effect that he hoped the victim had given them the correct code number because he would hate to get hurt over a little bit of money. Randolph returned to the car after receiving $90.00 from the machine.

The defendants then drove north stopping occasionally for food and gas. Eventually, they stopped at a motel in Virginia and rented a room. As they were entering the room, Randolph pulled

out a gun which was different from the one she had displayed when the victim was abducted. The victim was bound and gagged in the room.

While Sanders and Randolph were asleep, the victim managed to free herself and leave the room. She went to the manager's office and called the Arlington County Police. She gave them a statement and a description of the car. The police then entered the room where the defendants were staying. Sanders and Randolph tried to flee, but Sanders was immediately apprehended. Randolph, however, escaped down a stairwell and managed to get to the car. As she was trying to drive away, a policeman drew his gun and forced Randolph to stop. Both defendants were placed under arrest. The officers seized two guns, one from the person of Sanders and one from a purse lying on the front seat of the car. Other pieces of evidence were taken from the motel.

On returning to Wake County, the victim gave a statement to the local police. She also accompanied police around Wake County in an attempt to locate the scene of the sexual attack. They were able to find the location of the attack and found paper cups and a whiskey bottle there. Latent prints, which matched Randolph's and Sanders' fingerprints, were found on the bottle.

The defendants presented no evidence and moved to dismiss the charges against them. The motions were denied, and the cases were submitted to the jury. The defendants were found guilty as charged.

[1] The defendants initially contend that the State failed to present sufficient evidence to support the verdicts finding them guilty of the armed robbery of $90.00. Specifically, they argue that there was no evidence of the use of a dangerous weapon to threaten the victim at the time the bank card was taken or when the money was acquired by use of the bank card. We disagree.

Armed robbery is the taking or attempted taking of personal property by the use or threatened use of a firearm or dangerous weapon, whereby the life of a person is endangered or threatened. N.C.G.S. 14-87. The element of danger or threat to the life of the victim is the essence of the offense. *State v. Gibbons*, 303 N.C. 484, 279 S.E. 2d 574 (1981).

While there is no evidence that the defendants displayed a firearm or other dangerous weapon at the exact times they took the bank card or used the bank card to acquire the money, the conduct of the defendants created the same "continuing threat" as was present in *State v. Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978). In that case a woman was sodomized at gunpoint. As the assailants prepared to leave the scene, one of them took her diamond ring. We noted that, although there was no evidence that a gun was displayed at the time of the taking, it had been made clear previously that the gun would be used if she resisted. We held that this continuing threat constituted a threatened use of a firearm which endangered or threatened her life within the meaning of the statute.

In this case, the victim testified that Randolph displayed a revolver at the time she was abducted and told her "not to try anything funny" while they drove to pick up Sanders. Later she was instructed to keep her eyes shut while they were driving and warned that if she opened them, "it would be for the last time." On one occasion while stopping for gas, Randolph told her "not to try anything" and that she "had her finger on the trigger." Also, while Randolph went up to the teller machine, Sanders stated that he hoped the victim had given them the correct code number because he "would hate to get hurt over a little bit of money." As in *Joyner*, there was a display of a firearm which induced the victim to acquiesce to the defendants' demands. Furthermore, on several occasions the defendants indicated that they would use the weapon if the victim resisted. We hold that the conduct of Sanders and Randolph rose to the level of a continuing threat of the use of a firearm sufficient to support conviction of the defendants under N.C.G.S. 14-87.

The defendants next make separate, but closely intertwined, arguments concerning their convictions for first degree rape and sexual offense. The defendant Randolph claims that the State failed to produce sufficient evidence to support her conviction for first degree rape and sexual offense on the theory that she was an aider and abettor. Sanders makes no argument with regard to the rape conviction but contends that the conviction for first degree sexual offense should be reversed as there was no evidence that he displayed or used a deadly weapon or that he was aided and abetted by Randolph. We find these arguments to be

without merit and find no error in the convictions of each defendant for both offenses.

[2]  Randolph was convicted of first degree rape and first degree sexual offense based on a finding that she aided and abetted Sanders in committing the acts. More than mere presence at the crime scene is required in order to support a finding that a defendant is an aider and abettor. Additionally, it ordinarily must be shown that the person aided, encouraged, or advised another to commit the crime. *State v. Walden*, 306 N.C. 466, 293 S.E. 2d 780 (1982); *State v. Locklear*, 304 N.C. 534, 284 S.E. 2d 500 (1981). Aiding and abetting requires a "community of unlawful purpose" between two or more defendants. *State v. McKinnon*, 306 N.C. 288, 293 S.E. 2d 118 (1982).

Randolph argues the evidence merely shows that she was present when the act occurred, and that there was no showing that she committed any affirmative act which would constitute aiding and abetting. We disagree. The evidence tended to show that Randolph had previously threatened the victim with a gun. Randolph was driving when Sanders got into the back seat with the victim. Randolph proceeded to drive the car down an isolated dirt road and stop. When the victim began to perform fellatio on Sanders, Randolph remarked that she "had to see this." Later when Sanders was raping the victim, Randolph moved the victim's legs around in an effort to aid Sanders in penetrating her vagina. The victim was also forced to suck Randolph's breast while Sanders and Randolph had intercourse. The evidence clearly supported a finding that Randolph was not only present at the crime scene but that she actively encouraged and participated in the criminal acts.

[3]  Sanders was convicted of first degree sexual offense, a violation of N.C.G.S. 14-27.4. There are four courses of conduct which will support a conviction for first degree sexual offense. They include cases in which the perpetrator employs or displays a deadly weapon and cases in which he is aided and abetted by one or more persons. These two theories were relied upon by the State at trial.

Sanders argues that there was no evidence that he displayed or employed a deadly weapon at the time of the attack and that there was insufficient evidence to support a finding that Ran-

dolph aided and abetted him. Both arguments are without merit. The evidence clearly supported a finding that Randolph aided and abetted Sanders in the rape and sexual offense. Additionally, the evidence was sufficient to permit the inference that Sanders procured the victim's submission through the use of a deadly weapon. The evidence tended to show that Sanders and Randolph conspired to kidnap someone and to use their victim's automobile to leave Fayetteville. Randolph employed the use of a gun to facilitate the abduction. Several times prior to the attack, the victim was reminded in Sanders' presence by Randolph that she had a gun, and both defendants warned the victim to do as they said. Based upon the evidence showing a concert of action by Sanders and Randolph, there can be no doubt that Sanders was aware of the fact that Randolph had used a gun to abduct the victim and continued to threaten her with the gun. This permitted a reasonable inference that Sanders used the continuing threat of Randolph's gun to effectuate the attack. *See State v. Barnette*, 304 N.C. 447, 284 S.E. 2d 298 (1981); *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976).

[4] The defendants' next contention is that they were denied their right to remain silent due to comments by the prosecutor referring to their failure to testify. During his closing argument, the prosecutor stated:

The Judge is going to instruct you in the meaning of flight and what it signifies about a person's state of mind. It suggests, ladies and gentlemen, a guilty state of mind. This is why people run and hide, because they're guilty.

Sanders and Randolph have not said much more about these affairs, but that was enough. They have spoken elegantly through their flight, or luckily through their attempted flight from the scene.

The defendants claim that this constituted an impermissible reference to their failure to testify entitling them to a new trial. We do not agree.

A criminal defendant cannot be compelled to testify, and any reference by the State regarding his failure to do so violates an accused's constitutional right to remain silent. *Griffin v. California*, 380 U.S. 609, *reh. denied*, 381 U.S. 957 (1965). Well before

*Griffin*, N.C.G.S. 8-54 provided that the failure of a defendant to testify creates no presumption against him. We have interpreted this statute as prohibiting the prosecution, the defense, or the trial judge from commenting upon the defendant's failure to testify. *See, e.g., State v. Bovender*, 233 N.C. 683, 65 S.E. 2d 323 (1951); *State v. Humphrey*, 186 N.C. 533, 120 S.E. 85 (1923). A nontestifying defendant, however, has the right upon request to have the trial court instruct the jury that his failure to testify may not be held against him. *Carter v. Kentucky*, 450 U.S. 288 (1981); *State v. Leffingwell*, 34 N.C. App. 205, 237 S.E. 2d 550 (1977).

In *State v. Bovender*, 233 N.C. 683, 65 S.E. 2d 323 (1951), we stated that the purpose behind the rule prohibiting comment on the failure to testify is that extended reference by the court or counsel concerning this would nullify the policy that the failure to testify should not create a presumption against the defendant. If the statement here was a reference to the defendants' failure to testify, it was not an "extended reference." The thrust of that portion of the prosecutor's final argument concerned the defendants' attempt to flee the motel room and the state of mind that such conduct infers. Any reference to the failure to testify was so brief and indirect as to make improbable any contention that the jury inferred guilt from the failure of the defendants to testify. The statement here clearly was not comparable to those arguments which we have held to be improper comments on a defendant's failure to testify. *See, e.g., State v. McCall*, 286 N.C. 472, 212 S.E. 2d 132 (1975); *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975).

We also note that the defendants did not object to the prosecutor's argument at the time it was made. Instead, their attorneys called it to the trial court's attention at the close of the State's argument. At that time, the trial court offered to give a cautionary instruction. Defense counsel stated that the instruction might tend to highlight the prosecutor's statement and, therefore, declined the cautionary instruction.

We have held that an improper reference to a defendant's failure to testify is cured by the trial court's sustaining a prompt objection and by giving a curative instruction. *See State v. Clayton*, 272 N.C. 377, 158 S.E. 2d 557 (1968); *State v. Monk*, 286

N.C. 509, 212 S.E. 2d 125 (1975). Here the defendants failed to promptly object and decided against requesting a curative instruction when this was suggested by the trial court. These decisions fell within the ambit of discretionary trial tactics, and the defendants are not now entitled to a new trial for the failure of the trial court to grant relief, since the statement was not so grossly improper as to require the trial court to act *ex mero motu*. *See State v. Hopper*, 292 N.C. 580, 234 S.E. 2d 580 (1977).

[5] The defendants' next contention is that the trial court erred when it refused to dismiss the indictments for kidnapping and larceny. All of the evidence tended to show that the kidnapping of the victim and the larceny of her automobile occurred in Fayetteville which is located in Cumberland County. The defendants were indicted for these crimes by the Wake County Grand Jury. The defendants argue that a grand jury has no power to return an indictment for a crime committed in another county and that the indictments for kidnapping and larceny should have been dismissed. We agree.

At common law a grand jury had the power to indict only for crimes allegedly committed within the county in which it sat, and an indictment which alleged an offense occurred outside the county was void for lack of jurisdiction by the grand jury. *State v. Mitchell*, 202 N.C. 439, 163 S.E. 581 (1932). Supplementing this rule was the act of 1854-55 — Rev. Code ch. 35, § 25 — which stated that the offense was deemed to have been committed in the county alleged in the indictment unless the defendant denied this by a plea in abatement. This provision of the act of 1854-55 was later carried forward as N.C.G.S. 15-134. Since the grand jury had jurisdiction to indict only for crimes alleged to have occurred in its own county, this provision in effect established jurisdiction absent an attack by a defendant by a plea in abatement. As we noted in *State v. Mitchell*, 83 N.C. 674 (1880), the statute was designed to remedy the problems encountered when an offense was committed near county boundaries which were undetermined or unknown.

N.C.G.S. 15-134 was repealed effective July 1, 1975, and the General Assembly enacted N.C.G.S. 15A-135 to provide that allegations of venue in any criminal pleading become conclusive in the absence of a timely motion to dismiss for improper venue.

N.C.G.S. 15A-952 requires that a motion for improper venue must be made at or before arraignment. The Official Commentary to N.C.G.S. 15A-135 states that this section carries forward the provisions of N.C.G.S. 15-134 in modified form. The plea in abatement was replaced by the motion to dismiss for improper venue, and the requirement that the defendant allege the county where venue would properly lie was omitted.

In *State v. Morrow*, 31 N.C. App. 654, 230 S.E. 2d 568 (1976), *rev. denied*, 297 N.C. 178, 254 S.E. 2d 37 (1979), the Court of Appeals interpreted N.C.G.S. 15A-135 to mean that a defendant who wishes to challenge an indictment on the basis that the offense occurred in a county other than the county in which the indictment was returned must do so by a timely motion to dismiss for improper venue. The Court of Appeals took the same position in *State v. Currie*, 47 N.C. App. 446, 267 S.E. 2d 390, *new trial awarded for other reasons, cert. denied*, 301 N.C. 237, 283 S.E. 2d 134 (1980). This interpretation is incorrect, however, and we overrule *Morrow* and *Currie* on this issue.

The construction which the Court of Appeals has placed on N.C.G.S. 15A-135 seems to have been based upon its view that the allegation in a criminal pleading of the county where the charged offense occurred is essentially one of venue. *Id.* Under the common law, however, a grand jury could only indict for crimes which allegedly occurred in its own county. The statement of the county where the offense took place established *prima facie* jurisdiction of the grand jury to return the indictment. Former N.C.G.S. 15-134 did not change this. It merely limited a defendant's means of attacking the indictment on the ground that the offense occurred in a county other than that named in the indictment. Current N.C.G.S. 15A-135, however, only limits a defendant's means of attacking *venue*. Since the statement in an indictment of the county where the crime allegedly occurred establishes *prima facie jurisdiction*, a challenge to this statement can be asserted at any time as stated in N.C.G.S. 15A-952(d).

Here, the indictment itself alleged that the kidnapping and larceny of the vehicle took place in Cumberland County. Nevertheless, the State argues that N.C.G.S. 15A-926(a) provides that two or more offenses may be joined in one pleading or for trial when the offenses are based on the same act or constitute parts

of a single plan, and that N.C.G.S. 15A-132(b) grants concurrent venue to all counties in which an act joined under N.C.G.S. 15A-926(a) occurred. The State contends that this provides a sufficient basis for venue in Wake County. This argument is correct but fails to address the fundamental *jurisdictional* defect in the kidnapping and larceny indictments. The Wake County Grand Jury simply had no *jurisdiction* to indict the defendants for these crimes. We, therefore, arrest judgment in the first degree kidnapping and felonious larceny cases against the defendants. Since the armed robbery cases were consolidated for sentencing with the kidnapping and larceny cases, we vacate the sentences in the armed robbery cases and remand those cases to the Superior Court, Wake County, for resentencing. The legal effect of arresting judgment in the first degree kidnapping and felonious larceny cases is to vacate the verdicts and sentences of imprisonment in those cases. *State v. Benton*, 275 N.C. 378, 167 S.E. 2d 775 (1969). If the State chooses, it may proceed against the defendants for those offenses upon proper bills of indictment returned by the grand jury of Cumberland County. *Id.*

The defendant Sanders raises two additional assignments of error. He first contends that he was entitled to a jury instruction on second degree sexual offense. We disagree.

[6] To support a conviction for first degree sexual offense the State must show either that the defendant used a deadly weapon or was aided and abetted in carrying out the crime. N.C.G.S. 14-27.4. All the evidence at trial tended to show that the victim submitted due to the display and threatened use of a firearm by Randolph, and that the two defendants were at all times acting in concert. The evidence is also clear that Randolph aided and abetted Sanders in the commission of the offense. There simply was no evidence which would support a finding of guilt of second degree sexual offense.

[7] Sanders also contends that the trial court abused its discretion when it denied his motion for a bill of particulars. Prior to trial, Sanders filed a motion for a bill of particulars with respect to the rape, sexual offense and armed robbery charges. The motion requested a concise statement of the facts and circumstances underlying the charges including the time and place where the

State v. Randolph

acts occurred and a statement of the overt acts committed by Sanders. The motion was denied.

We have held that the short form indictments set out in N.C.G.S. 15-144.1 and 15-144.2 for first degree rape and first degree sexual offense provide adequate notice of the charges. *State v. Edwards*, 305 N.C. 378, 289 S.E. 2d 360 (1982); *State v. Lowe*, 295 N.C. 596, 247 S.E. 2d 878 (1978). In *Lowe* we noted that a defendant may request a bill of particulars to obtain information to supplement the facts contained in the indictment. The granting of a motion for a bill of particulars lies within the discretion of the trial court and is not subject to review by the appellate courts except for gross abuse of discretion. *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981), *cert. denied*, --- U.S. ---, 103 S.Ct. 3552, *reh. denied*, --- U.S. ---, 104 S.Ct. 37 (1983).

N.C.G.S. 15A-925(c) provides that the trial court must order the State to respond to a motion for a bill of particulars when the defendant shows that the requested information is necessary to enable him to adequately prepare his defense. We have held that the denial of a defendant's motion for a bill of particulars will be held error only upon a clear showing that the lack of timely access to the information significantly impaired the defendant's preparation and conduct of his case. *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980). There is no evidence of such prejudice here. The warrants and indictments for the rape, sexual offense and armed robbery adequately informed Sanders that the crimes allegedly occurred on July 13 and 14, and that they occurred in Wake County. The defendant failed to present any evidence to rebut the charges and made no showing as to how his preparation and conduct of the case was impaired in any way by the denial of the motion for a bill of particulars. Therefore, he has failed to show prejudicial error in the denial of his motion.

For the foregoing reasons, we reach the following results in the cases against the defendants:

No. 83CRS62165 and No. 83CRS62166—First Degree Kidnapping (both defendants)—Judgment arrested.

No. 83CRS62167 and No. 83CRS62168—Felonious Larceny (both defendants)—Judgment arrested.

In re Assessment of Taxes Against Village Publishing Corp.

No. 83CRS59560 and No. 83CRS59563—Armed Robbery (both defendants)—Sentence vacated and remanded for resentencing.

No. 83CRS47857 and No. 83CRS47859—First Degree Sexual Offense (both defendants)—No error.

No. 83CRS47858 and No. 83CRS47860—First Degree Rape (both defendants)—No error.