STATE OF NORTH CAROLINA v. JAMES KEITH ROSS

No. 520A85

(Filed 5 May 1988)

**1. Criminal Law §§ 119, 163.3— instruction promised at charge conference—not given—no objection—appellate review**

The trial court's failure to give a promised instruction was properly before the Supreme Court on appeal despite defendant's failure to object prior to the commencement of jury deliberations because, under *State v. Pakulski,* 319 N.C. 562, a request for an instruction at the charge conference is sufficient compliance with Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure to warrant full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.

**2. Criminal Law § 116; Constitutional Law § 75— requested instruction on defendant's decision not to testify—promised but not given—prejudicial error**

There was prejudicial error in a first degree murder prosecution from the court's failure to give a requested and subsequently promised jury instruction concerning defendant's decision not to testify in his own defense. Although the evidence of defendant's guilt was substantial, in the context of the historical importance of the Fifth Amendment to the United States Constitution, and the fact that defendant's attorney forecast evidence of self-defense but ultimately presented no evidence at all, the State did not prove that the error was harmless beyond a reasonable doubt.

Justice MARTIN dissenting.

Justice WHICHARD joins in this dissenting opinion.

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of death entered by *Allen, J.,* at the 12 August 1985 Criminal Session of Superior Court, MCDOWELL County, upon defendant's conviction by a jury of two counts of murder in the first degree. Heard in the Supreme Court on 13 April 1988.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Gordon Widenhouse for defendant-appellant.*

MEYER, Justice.

Defendant was convicted of two counts of murder in the first degree arising out of the shooting deaths of two teen-age boys, Ricky Buchanan and Gary Bailey. The case was tried as a capital case, and consistent with the jury's recommendation, the trial court sentenced defendant to death in both cases. In his appeal to this Court, defendant brings forward numerous assignments of error concerning both the guilt-innocence and the sentencing phases of his trial. We have reviewed the entire record in this matter, and because we find that the trial court committed prejudicial error in failing to give a requested and subsequently promised jury instruction, we hold that defendant is entitled to a new trial.

An extensive review of the evidence presented at trial in this matter is not necessary to dispose of the single issue we address here. The evidence tends to show that defendant was employed as the caretaker of a campground in McDowell County, North Carolina, near the town of Dysartsville. Defendant, who was single, lived alone in a house on the campground premises provided by his employer. Unbeknownst to his employer, defendant, who apparently suffered from pedophilia, had a history of homosexual behavior which included, among other things, a conviction for a sex-related crime in Virginia.

The victims, Ricky Buchanan and Gary Bailey, were both teen-age boys familiar with defendant and the campground. At an uncle's birthday party on 23 January 1985, the two were overheard while talking of going to visit defendant at the campground later that same day. Though the two boys were seen at a local store later that afternoon, they failed to return home that evening and were never heard from again.

On 26 January, pursuant to instructions from the then-incarcerated defendant, law enforcement officers began to dig in a filled-in grease pit adjacent to defendant's house. Shortly thereafter, they found the victims' bullet-riddled bodies. Both of the boys had been shot multiple times, and Ricky Buchanan had been shot on one occasion at extremely close range.

A consensual search of defendant's house revealed, among other things, stains on the living room carpet later identified as blood. Law enforcement officers also found a .32-caliber revolver behind some books on a bookshelf. Expert examination of the bullets removed from the victims' bodies revealed that these bullets had been fired from the .32 revolver. Close examination of the barrel of the revolver revealed blood and, in addition, two human hairs. The blood was of the same type as that of one of the victims, Ricky Buchanan, while the hairs were found to be a head hair from Ricky Buchanan and a pubic hair from defendant Ross.

During both the jury selection process and the opening statement, defense counsel forecast self-defense as defendant's theory of the case. Nevertheless, defendant ultimately did not testify, nor did he in fact present any evidence in his own defense, during the guilt-innocence phase of the trial below. It was in this context that, pursuant to the above-mentioned and other condemning evidence, the jury found defendant guilty of first-degree murder in the deaths of both boys and recommended that defendant be sentenced to death by the trial court.

In his first assignment of error, and the only issue we shall address in this opinion, defendant asserts that the trial judge committed prejudicial error in failing to give a requested and subsequently promised jury instruction at the conclusion of the guilt-innocence phase of the trial below. Specifically, defendant claims here that his cause was severely prejudiced when the trial judge neglected to instruct the jury as requested on the defendant's decision not to testify and, accordingly, that he is entitled to a new trial. We agree, and we hereby order that the defendant receive a new trial.

As we note above in our survey of the facts of the case at bar, defendant did not testify, and in fact presented no evidence at all, during the guilt-innocence phase of the trial below. At the close of that first phase of defendant's trial, a charge conference

was convened by the trial judge for the purpose of determining which jury instructions would be employed prior to the jury's deliberation. That conference produced the following exchange:

> THE COURT: All right. This brings up the Charge Conference. This starts it off, I guess. I will use the pattern on first degree murder as to each count and second degree murder as to each count. I will also charge and I understand that you request it —

> MR. COATS: I was looking for the pattern charge number.

> THE COURT: *Failure of the defendant to testify?*

> MR. COATS: *Yes sir, that's correct.*

> THE COURT: *You can put it in the record later. I will use it.* Are there any other requested instructions?

> MR. LEONARD: Not for the State.

> MR. COATS: Not for the defendant at this time, your Honor.

(Emphasis added.)

Thus, defendant requested, and the trial judge indicated he would give, a jury instruction concerning defendant's decision not to testify in his own defense at trial. Yet, the transcript reveals, and the parties agree, that for whatever reason — perhaps the tension associated with any capital murder trial — the trial judge neglected to give the requested and promised jury instruction. It is this failure on the part of the trial judge to which defendant now assigns error. We find merit in defendant's claim here, and we hold that the trial judge's failure to instruct the jury on defendant's failure to testify constitutes, on the facts of this case, prejudicial error entitling this defendant to a new trial.

[1] We note at the outset that the trial judge's failure to give the requested and promised instruction is properly before us on appeal despite defendant's failure to object prior to the commencement of the jury's deliberation. Granted, it is true that the transcript reveals that defendant failed to embrace a final, explicit opportunity provided by the trial judge for remaining comments on the jury instructions:

THE COURT: I'm going to ask that the alternate jurors remain here. They are s[e]tting up in the Court Reporter's Office where you all can stay for the time being and see if we can't find you a little bit more comfortable quarters to stay but I don't want to let you go at this point. Don't discuss the matter. Go into the Court Reporter's room.

I will caution everyone at this time, if you're back here in this back hallway be very very cautious what you say and if I have any problem at all, I will just have it vacated and won't allow anybody back there around these jurors or the alternate jurors. Sheriff, if you'll keep that in mind. Try to stay as close to it as you can, please sir. *Anything further?*

MR. COATS: *No sir.*

MR. LEONARD: *No.*

(Emphasis added.)

It is also true that Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides that no party may assign as error any portion of the jury charge or omission therefrom unless he enters an objection before the jury retires to consider its verdict. *However,* in the recent case of *State v. Pakulski,* 319 N.C. 562, 356 S.E. 2d 319 (1987), we held that a request for an instruction at the charge conference is sufficient compliance with the rule to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions. Accordingly, defendant's assignment of error is properly before us, and we turn now to a full review of the omitted jury instruction in the case at bar.

[2]  It is beyond any question that the trial judge's failure to give the requested and subsequently promised jury instruction concerning defendant's decision not to testify in his own defense constitutes error. The State in fact explicitly concedes as much in its written brief to this Court in this matter. In the important case of *Carter v. Kentucky,* 450 U.S. 288, 67 L.Ed. 2d 241 (1981), the United States Supreme Court held that "a state trial judge has the constitutional obligation, *upon proper request,* to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify" by giving an appropriate instruction. *Id.*

at 305, 67 L.Ed. 2d at 254 (emphasis added). This Court expressly adopted this approach in its decision in *State v. Randolph,* 312 N.C. 198, 321 S.E. 2d 864 (1984), and accordingly, the trial judge's omission in the case at bar is error.

The remaining question, and the pivotal one, is whether the trial judge's error in this case was sufficiently prejudicial to defendant's cause to warrant our order of a new trial. In the case before us, the trial judge's error, which implicates defendant's right pursuant to the fifth amendment to the United States Constitution not to be compelled to be a witness against himself, is of constitutional moment. Accordingly, the relevant standard with regard to a prejudice determination is provided in N.C.G.S. § 15A-1443(b), which states as follows:

> A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

N.C.G.S. § 15A-1443(b) (1983). Pursuant to this statutory standard, the burden is upon the State in this case to prove beyond a reasonable doubt that the trial judge's error was harmless. We have considered this matter very carefully, and we simply cannot say that the State has carried this burden.

The State's principal argument in support of the position that it has properly borne its burden here is that the evidence of defendant's guilt of these two heinous murders is simply overwhelming. We concede that there is substantial evidence of this defendant's guilt of the crimes charged. However, in the context of the historical importance of the constitutional right implicated by the omitted instruction and, even more significantly, the tactics employed by defendant's counsel at trial, we cannot agree that the State has proven the trial judge's error harmless beyond a reasonable doubt.

The fifth amendment to the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself. Many of the nation's courts, most significantly the United States Supreme Court, have noted the importance of this right, and by extension, the importance of jury

instructions concerning this right. It is the opinion of many that this right is particularly important because the state of affairs it seeks to ensure—namely, that we not draw an adverse inference from a criminal defendant's failure to testify in his own defense—is counterintuitive.

In *Carter v. Kentucky*, 450 U.S. 288, 67 L.Ed. 2d 241, for example, the United States Supreme Court addressed this point as follows:

> Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law. *Such instructions are perhaps nowhere more important than in the context of the Fifth Amendment privilege against compulsory self-incrimination, since "[t]oo many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are . . . guilty of crime . . . ." Ullman v United States*, 350 US 422, 426, 100 L Ed 511, 76 S Ct 497, 53 ALR2d 1008.

*Id.* at 302, 67 L.Ed. 2d at 252 (emphasis added). The State's argument that the trial judge's error in this case was harmless beyond a reasonable doubt can only be properly considered in the context of this solemn admonishment.

Also crucial to this determination as to prejudice are the trial tactics employed below by defendant's attorney. As we noted earlier in our survey of the facts of this case, during the jury selection, and again during the opening statement, defendant's attorney forecast self-defense as defendant's theory of the case. Ultimately, defendant did not testify, nor did he present any evidence at all, during the guilt-innocence phase of the proceeding below.

The jury, having been told at the outset of this case essentially that this defendant committed the killings, but did so only in defense of his own life, had an expectation that was never met—namely, that defendant would present evidence as to why he killed the victims. It cannot be gainsaid that, when the jury's expectation was not met, the omitted jury instruction loomed particularly large. This case-specific scenario, together with the above-discussed general importance of the constitutional right im-

plicated by the omitted instruction, leads us to find unpersuasive the State's argument that the trial judge's error was harmless beyond a reasonable doubt.

In an additional argument that the trial judge's error here was harmless beyond a reasonable doubt, the State asserts that, since neither lawyer noticed the trial judge's omission at trial, so too must the jury have failed to notice, thereby rendering the error's effect nugatory. We find this argument from the State unpersuasive. In any criminal case, even in one less unusual than this one, it is manifest that the jury will notice a given defendant's failure to testify in his own defense. Justice Stewart, in his dissent in *Griffin v. California*, 380 U.S. 609, 14 L.Ed. 2d 106, *reh'g denied*, 381 U.S. 957, 14 L.Ed. 2d 730 (1965), addressed this point in the following manner:

> It is not, as I understand the problem, that the jury becomes aware that the defendant has chosen not to testify in his own defense, for *the jury will, of course, realize this quite evident fact, even though the choice goes unmentioned.*

*Id.* at 621, 14 L.Ed. 2d at 113 (emphasis added). Here, where the jury was promised at the outset of the case evidence concerning a self-defense theory only to have the guilt-innocence phase of the trial end without any such evidence, the State's argument is even less persuasive.

In a final argument in support of its position that the trial judge's error here was harmless, the State notes that, although the trial judge omitted the instruction in question, he did give an instruction concerning the presumption of innocence, thus rendering the omission somehow less harmful. The State's argument is again without merit. The United States Supreme Court dealt with this very assertion in *Carter v. Kentucky*, 450 U.S. 288, 67 L.Ed. 2d 241. There, Justice Stewart stated, and we quite agree:

> *Although the jury was instructed that "[t]he law presumes a defendant to be innocent," it may be doubted that this instruction contributed in a significant way to the jurors' proper understanding of the petitioner's failure to testify.* Without question, the Fifth Amendment privilege and the presumption of innocence are closely aligned. But these principles serve different functions, and *we cannot say that the*

> *jury would not have derived "significant additional guidance," Taylor v Kentucky, 436 US 478, 484, 56 L Ed 2d 468, 98 S Ct 1930, from the instruction requested.*

*Id.* at 304, 67 L.Ed. 2d at 253 (emphasis added).

In conclusion, we have reviewed the entire record and each of defendant's assignments of error in this case. We hold, pursuant to our discussion above, that the trial judge committed error in failing to give the requested and subsequently promised jury instruction concerning defendant's decision not to testify during the guilt-innocence phase of the trial below. We hold further that, because of the historical importance of the right affected and the trial tactics employed by defendant's attorney, the trial judge's error was prejudicial to defendant's cause. Accordingly, the result is a

New trial.

Justice MARTIN dissenting.

I dissent from the holding of the majority that defendant is entitled to a new trial of this double murder case because of the failure of the trial judge to instruct the jury in accord with N.C.P.I. — Crim. 101.30. *See* N.C.G.S. § 8-54 (1986); *State v. Randolph,* 312 N.C. 198, 321 S.E. 2d 864 (1984).

It is to be noted that this issue applies only to the guilt phase of the trial as defendant testified at the sentencing hearing, relating many inculpatory statements.

The state concedes that this failure by the trial judge was error but insists that the error was harmless beyond a reasonable doubt. Failure to so instruct upon timely request by defendant has been held to violate defendant's rights under the United States Constitution. *Carter v. Kentucky,* 450 U.S. 288, 67 L.Ed. 2d 241 (1981).

Defendant also enters the harmless error battleground in his brief, and the majority opinion turns upon that issue. The United States Supreme Court has never held that this instructional error was not subject to a harmless error analysis; therefore it is appropriate for this Court to apply a harmless error analysis. We

are required to be satisfied beyond a reasonable doubt that the constitutional error complained of did not contribute to the verdict obtained. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, *reh'g denied,* 386 U.S. 987, 18 L.Ed. 2d 241 (1967); N.C.G.S. § 15A-1443(b) (1983).

In my view the state has the better side of the dispute. It has long been held by this Court that it is the better practice not to instruct on defendant's failure to testify, absent a specific request by defendant. *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Bryant,* 283 N.C. 227, 195 S.E. 2d 509 (1973). This is true because such instructions emphasize to the jurors the fact that defendant did not testify. The reason for the rule not allowing comment on defendant's failure to testify is to assure a fair trial to defendant. Here, it is clear to me that defendant received a fair trial; defendant did not testify and no one commented or alluded to this fact. The failure of the trial judge to give the requested instruction could not have contributed in any way to the verdict.

Not only was defendant's trial fair, but no reasonable jury could fail to convict defendant of murder in the first degree on the mass of evidence arrayed against him. Defendant's homosexual relationship with several teenage boys in the neighborhood was fully established. Defendant maintained this relationship in part by the payment of money to the boys. The Buchanan boy realized that defendant was susceptible to extortion. Tensions were created that led to violence.

After the crimes defendant attempted to "cover up" and remove evidence of his guilt by cleaning carpet and trying to buy a new carpet to replace the one stained by the blood of his victims. Even more damning evidence was defendant's statements to the officers telling them where to look for the bodies, which were found in the grease pit. He further gave permission for the search of his house, where the murder pistol was found hidden behind some books. The bullets that caused the deaths of the two boys were fired from defendant's pistol. Gary Bailey was shot in the head, back, and abdomen; Richard Buchanan was shot twice in the brain at contact range and also in the back and arm. Blood on the pistol was identified as being from Buchanan, and sticking to that blood was head hair from him and pubic hair from the de-

fendant indicating that defendant executed Buchanan while engaged in a homosexual act with him.

When balanced against the trial judge's instructional error, the evidence of defendant's guilt engulfs him beyond any reasonable doubt. There is no reasonable basis to find that the trial judge's error contributed to the verdicts of guilty of murder in the first degree. The only other possible verdicts were murder in the second degree and not guilty. If this issue were applicable to the *punishment* phase of the trial, defendant's argument might be somewhat more persuasive, but such is not the case here.

Despite the best efforts of the majority, I can find no rational basis to hold that the error contributed to the verdict of guilt and am convinced beyond a reasonable doubt that the error was harmless.

Justice WHICHARD joins in this dissenting opinion.