STATE OF NORTH CAROLINA
v.
JOHN MICHAEL WELBORN.
No. COA07-567
Court of Appeals of North Carolina.
Filed November 20, 2007
This case not for publication
Attorney General Roy Cooper, by Associate Attorney General LaToya B. Powell, for the State.
Michael J. Reece, for defendant-appellant.
TYSON, Judge.
John Michael Welborn ("defendant") appeals from judgment entered after a jury found him to be guilty of first-degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4(a)(1). We find no error.

I. Background
The State's evidence tended to show that on 1 December 2004, J.T., an eight-year-old girl, was outside and riding her bike near defendant's house after school. J.T. knew defendant as a friend of her family. Defendant was seventeen years old. Defendant frequently visited J.T.'s house to see her older brother, K.T., who was two years younger than defendant. Defendant asked J.T. if she would help him fix his bike. J.T. stopped and helped defendant. Subsequently, defendant and J.T. went inside defendant's house to get something to drink. Before getting J.T. a drink, defendant went to the bathroom.
After defendant emerged from the bathroom, J.T. started to get up from the couch. Defendant pushed her down with his arm and held onto her shirt or chest. J.T. told defendant to let her up, but he said, "no." Defendant pulled J.T.'s pants and panties down and began to touch her. While holding her down, defendant inserted two of his fingers inside J.T.'s "private" and "was moving them around," which hurt J.T. J.T. was "screaming and crying" but defendant would not stop. J.T. got up, pulled up her pants, and started to run outside.
Before J.T. reached the outside, defendant told her that if "[she] told anybody he was going to kill [her]." J.T. believed defendant's threat. When J.T. got home, she went in her room and cried, but did not tell her mother what defendant had done. J.T. was afraid to talk about what had happened because she thought if her brother, K.T., found out, he would confront defendant, and defendant would kill her.
Sometime after Christmas 2004, J.T. told two of her friends about defendant touching her. One night, while J.T. was sleeping, K.T. woke her up and asked whether "it was true." J.T. responded, "yes." The next morning, J.T.'s mother asked her about the incident. J.T. told her mother that defendant had touched her. J.T. also told her father when he arrived home that night. J.T.'s parents called the police and took her to the Dove House to be examined.
At trial, J.T. testified that she was afraid of defendant and did not want him coming to her house anymore. J.T. stated she did not sleep well at night and dreamed that defendant might kill her. J.T. also testified her school grades declined after the incident.
K.T. testified that he and defendant had been friends for about two years prior to the incident. K.T. and defendant did not attend school together, but saw each other after school or on the weekends. At some point, K.T. received a telephone call from a friend, who told him that he needed to talk to J.T. about something that happened between her and defendant. K.T. subsequently awoke J.T. during the night and asked her "if it was true." J.T. told him it was true and "started crying and wanting [him] to hold her." That same evening, K.T. told their mother what had happened to J.T.
Some time after a police report had been filed, K. T. and his friend B.W., saw defendant in the neighborhood and asked him "if he did it." At first, defendant said, "no." B.W. stated to defendant, "I'm not going to ask you but one more time, did you do it or did you not." Defendant responded "Yes I did," and left.
Linda Thompson, Assistant Director of the Emergency Department at Iredell Memorial Hospital and a S.A.N.E. Nurse at the Dove House ("Nurse Thompson"), qualified as an expert in the field of sexual assault examination. Nurse Thompson performed a sexual assault exam on J.T. on 6 May 2005 at the Dove House. The results of the exam were normal. Nurse Thompson testified a normal exam was not inconsistent with an allegation of vaginal penetration. Nurse Thompson further testified that a lapse in time between the date of the injury and the date of the examination has an effect on the findings because "the vaginal area is very quick to heal and repair itself."
J.T.'s parents testified regarding J.T.'s performance in school and the effect of the incident on her. Her mother noticed that J.T.'s grades declined and that she "was very whiny" and "crying all the time." J.T.'s father also witnessed the changes in J.T., including her declining grades and that "she wasn't as spirited as she was before." Once the allegations against defendant became publically known, J.T. began being teased at school. J.T. transferred to a new elementary school and her grades improved.
Defendant moved for the charges against him to be dismissed. The trial court denied his motion. Defendant chose not to testify on his own behalf. The jury requested to be allowed to view J.T.'s school records, which had been admitted as exhibits. The trial court granted this request.
On 7 December 2006, a jury found defendant to be guilty of first-degree statutory sexual offense. The trial court sentenced defendant to a minimum term of 192 months and a maximum term of 240 months imprisonment. Defendant appeals.

II. Issues
Defendant argues the trial court erred by: (1) allowing the jury to view J.T.'s school records without his express consent; (2)referring to J.T. as a victim during its jury instructions; and (3) entering judgment when the indictment did not allege every element of first-degree sexual offense.

III. School Records
Defendant argues the trial court erred by permitted the jury to view J.T.'s school records during their deliberations without his consent. We disagree.
A review of the transcript reveals that after receipt of the jury's request to see the records, the trial court held an off-the-record bench conference with the parties. In an effort to enter the results of this bench conference into the record, the following exchange occurred:
THE COURT: [The jury is] out. For the record, I'm not sure this got in the record. [The jury] sent us a note. They want copies of all report cards; that is, school information. Counsel for the State and the Defense  where is my Defense Lawyer? Listen up.
[DEFENSE COUNSEL]: I'm sorry, Judge.
THE COURT: You-all [sic] stipulating that those exhibits may be submitted to the jury, right?
[PROSECUTOR]: Yes, your Honor. For the record they are State's Three, Four, and Five. All the records relating to the report cards.
This exchange indicates that both parties consented to providing the records to the jury during an off-the-record conference. Further, when the trial court reiterated the parties' stipulation into the record, defense counsel made no objection to the trial court's representation of the agreement. We find that this assignment of error is without factual support in the record. This assignment of error is overruled.

IV. Jury Instructions
Defendant argues the trial court committed plain error by referring to the complaining witness as the "victim" in its jury instructions. We disagree.

A. Standard of Review
Our Supreme Court defined "plain error" as a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "grave error which amounts to a denial of a fundamental right of the accused," or error resulting in "a miscarriage of justice or in the denial to appellant of a fair trial." State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir.), cert. denied, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

B. Analysis
Our Supreme Court has held that a trial court's references to a prosecuting witness as "the victim" does not constitute plain error. See State v. McCarroll, 336 N.C. 559, 566, 445 S.E.2d 18, 22 (1994) ("We cannot hold that the reference to the prosecuting witness as the victim was an error so basic and lacking in its elements that justice could not have been done."); State v. Cabe, 136 N.C. App. 510, 514-515, 524 S.E.2d 828, 832, appeal dismissed, disc. rev. denied, 351 N.C. 475, 543 S.E.2d 496 (2000). This assignment of error is overruled.

V. Indictment
Defendant argues the "short form" indictment filed in this case was insufficient. Defendant concedes that the indictment complies with the form set forth in N.C. Gen. Stat. § 15-144.2(b).
Our Supreme Court has consistently held "indictments based on [N.C. Gen. Stat. § 15-144.2] are in compliance with both the North Carolina and United States Constitutions." State v. Wallace, 351 N.C. 481, 504-505, 528 S.E.2d 326, 341, cert. denied, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000); State v. Randolph, 312 N.C. 198, 210, 321 S.E.2d 864, 872 (1984); State v. Lowe, 295 N.C. 596, 604, 247 S.E.2d 878, 883-84 (1978).
Defendant argues this case law is inconsistent with the holding of the United States Supreme Court's holding in Jones v. United States, 526 U.S. 227, 143 L. Ed. 2d 311 (1999). Defendant has wholly failed to provide this Court with any argument in support of this contention. Accordingly, we will not address it. See N.C. R. App. P. 28(b)(6) (requiring that an appellant's brief contain an argument as to each assignment of error). This assignment of error is dismissed.

VI. Conclusion
The trial court did not err in allowing the jury to view J.T.'s school records without objection from defendant during an off-the-record conference. Defendant failed to preserve and has not shown that addressing J.T. as the victim in the jury instructions rose to the level of plain error. Defendant failed to support his argument that the indictment was insufficient. Defendant received a fair trial free from prejudicial errors he preserved, assigned, and argued and failed to show any plain error in the jury instructions.
No Error.
Judges GEER and STEPHENS concur.
Report per Rule 30(e).