STATE OF NORTH CAROLINA v. CHRISTOPHER MELVIN HUNT

No. COA08-14

(Filed 19 August 2008)

**Homicide— voluntary manslaughter—instruction—misstate-
ment on burden of proof—plain error analysis**

The trial court committed plain error in a first-degree murder
prosecution in which defendant was found guilty of second-
degree murder by improperly instructing the jury on the charge of
voluntary manslaughter, and defendant is entitled to a new trial,
because: (1) the instruction contained a misstatement of law as to
the burden of proof; (2) the trial court compounded the problem
by providing the jury with a written document that contained the
same misstatement as to the burden of proof; and (3) the Court of
Appeals was unable to conclude that the instructional error did
not have a probable impact on the jury's finding of guilt.

Appeal by defendant from judgment entered 27 July 2007 by
Judge Thomas H. Locke in Robeson County Superior Court. Heard in
the Court of Appeals 21 May 2008.

*Attorney General Roy A. Cooper, III, by Assistant Attorney
General Robert M. Curran, for the State.*

*Haral E. Carlin for defendant-appellant.*

HUNTER, Judge.

Christopher Melvin Hunt ("defendant") appeals from a judgment
entered on 27 July 2007 pursuant to a jury verdict finding him guilty
of second degree murder. Defendant was sentenced to a minimum
term of 180 months and a maximum term of 225 months imprison-
ment. After careful review, we grant defendant a new trial.

I.

The State presented evidence tending to show that on 13 January
2006, defendant shot and killed Jamal Roberts ("Roberts") in the

parking lot of Trader's Station in Robeson County. Defendant was at Trader's Station with his girlfriend, Candace Hunt; his sister, Kayla Locklear; his brother, Corey Locklear; his friend, Brad Edwards; and his cousins, Brandon Chavis and Christina Walters. An hour after defendant and his group arrived, Roberts arrived with a group of friends including Calvin Sinclair ("Sinclair"), Terrence Brown, and Dexter Stephens ("Stephens"). Brandon Chavis testified that he heard Sinclair say something provocative and gesture. Defendant also testified that Roberts, whom he had never met, indicated for him to go outside.

After playing pool for a while, Roberts and his entire group left to go to their car which was parked several rows behind defendant's van. About five minutes later, defendant and his group left Trader's Station. Roberts's group was still in their car when defendant left Trader's Station. Witnesses from Roberts's group stated that defendant walked past his van and toward their car, "talking trash" and cursing. Roberts and Stephens got out of their car and walked toward defendant, exchanging words and "talking junk." Defendant pulled a pistol from his pocket when Roberts and Stephens were about eight to ten feet from him. Defendant pointed the pistol at Stephens and pulled the trigger but the gun did not fire. Defendant then pointed the gun at Roberts and fired, hitting Roberts. Roberts and his friends were able to run back to their car and drive Roberts to the hospital, while defendant kept firing shots at them. Roberts died that night in the hospital.

Sheriff's investigators recovered three live 0.380 caliber rounds and four 0.380 caliber shell casings from the scene. Pursuant to a conversation with defendant, officers were led to defendant's brother's residence in Lumberton. Defendant's brother then led the officers to a wooded lot where the pistol was found wrapped in a plastic bag and hidden beneath some leaves. Ballistic tests showed that the pistol recovered had fired the bullet found in Roberts's body and matched the spent shell casings found at the scene. The three live rounds also matched the extractor and ejector markings found on the gun officers recovered in the woods.

Defendant testified that as Roberts and Stephens were yelling and swearing at him, Roberts had his hand in his back pocket while rushing toward him. Defendant thought Roberts was reaching for a gun in his back pocket and was fearful for himself and others with him. Defendant also testified to firing one warning shot into the ground, and another two or three into the air as a warning to Roberts

and Stevens, Defendant stated that he did not intend to shoot anyone and that he did not know Roberts had been hit. Although defendant testified he thought Roberts had a gun, no one, including defendant, actually saw Roberts with a gun.

Defendant presents the following issues for this Court's review: (1) whether the trial court committed plain error by instructing the jury as to the burden of proof on the charge of voluntary manslaughter; (2) whether the trial court committed reversible error by denying defendant's request for a jury instruction on defense of others; and (3) whether the trial court committed reversible error during the sentencing portion of defendant's trial by failing to consider mitigating factors.

II.

Defendant argues that the trial court committed plain error by improperly instructing the jury on the charge of voluntary manslaughter. We agree.

We review this issue for plain error because defendant failed to object to the instruction at trial. *See State v. Jones*, 358 N.C. 330, 346, 595 S.E.2d 124, 135 (2004). "Under the plain error standard of review, defendant has the burden of showing: '(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *Id.* (quoting *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983) (citing *United States v. Jackson*, 569 F. 2d 1003 (7th Cir.), *cert. denied*, 437 U.S. 907, 57 L. Ed. 2d 1137 (1978)).

The trial court instructed the jury on first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. The instructions on both counts of murder and on involuntary manslaughter were correct. The State concedes, however, that the instruction on voluntary manslaughter contained a misstatement of law as to the burden of proof. The State contends that the misstatement did not amount to plain error but was a mere *lapsus linguae* or slip of the tongue.

As to the voluntary manslaughter charge, the trial court instructed the jury that:

Now, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in the heat of passion upon adequate provocation, but rather that he acted with malice. *If the defendant fails to meet this burden,* the defendant can be guilty of no more than voluntary manslaughter.

(Emphasis added.)

Shortly after deliberation began, the jury returned to the court and requested "a list of requirements for [second] [d]egree [m]urder and [two] [m]anslaughters." The trial judge asked the court reporter to type up the original oral instructions as to those charges and give each juror a copy of the instructions. The instructions given to the jury included the misstatement on the instruction of voluntary manslaughter. The jury ultimately convicted defendant of second degree murder.

Although decided before the adoption of the plain error standard, our Supreme Court in *State v. Harris,* 289 N.C. 275, 280 221 S.E.2d 343, 347 (1976), held that " 'where the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part[,]' " (quoting *State v. Parrish,* 275 N.C. 69, 76, 165 S.E.2d 230, 235 (1969)). In the instant case, the trial court first charged the jury correctly as to the burden of proof on voluntary manslaughter and then incorrectly shifted the burden to defendant in the next sentence. Although the State argues that the error should be non-prejudicial because the trial court merely mis-spoke, the trial court further compounded the problem by providing the jury with a written document that contained the same misstatement as to the burden of proof. This is not a case with a singular misstatement where "the trial court repeatedly instructed the jury that the State had the burden of proving [that] defendant was guilty beyond a reasonable doubt." *State v. Baker,* 338 N.C. 526, 565, 451 S.E.2d 574, 597 (1994). Nor is this a case where the trial court made a misstatement of law which was preceded by several correct instructions. *See, e.g., State v. Hazelwood,* 187 N.C. App. 94, 101-02, 652 S.E.2d 63, 68 (2007) (singular misstatements of law not prejudicial when made before several correct statements of law). Instead, the trial court made a misstatement as to the burden of proof for the voluntary manslaughter charge and then provided that same misstatement to the jury in writing, along with the correct second degree murder and involuntary manslaughter charges. We therefore are unable to conclude that the instructional error did not have a probable impact on the jury's finding of guilt. Because defend-

ant is entitled to a new trial, we need not address his remaining assignments of error.

New trial.

Judges TYSON and JACKSON concur.