IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-627

Filed: 18 February 2020

Buncombe County, No. 15CRS93153

STATE OF NORTH CAROLINA

v.

ROBIN RENE RICHARDSON, Defendant.

Appeal by Defendant from judgment entered 24 January 2019 by Judge Marvin P. Pope, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 22 January 2020.

*Attorney General Joshua H. Stein, by Solicitor General Matthew W. Sawchak and Assistant Solicitor General Nicholas S. Brod, for the State-Appellee.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Katz, for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from judgment entered upon a jury verdict of guilty of voluntary manslaughter. Defendant argues that the trial court reversibly erred by omitting certain verbiage from the final mandate of its charge of voluntary manslaughter. Although the trial court erred, the trial court's instructions, read as a whole, adequately presented the law of voluntary manslaughter fairly and clearly to the jury. We thus discern no reversible error.

## I. Procedural History

Defendant Robin Rene Richardson was indicted on 1 February 2016 for the first-degree murder of Timothy Lee Fry. The case came on for trial on 14 January 2019. On 24 January 2019, a jury returned a verdict of guilty of voluntary manslaughter. Defendant was sentenced to 73-100 months' imprisonment. Defendant gave notice of appeal in open court.

## II. Factual Background

At trial, the evidence tended to show the following: Defendant and her boyfriend, Timothy Lee Fry, met in August of 2012 and moved into a house together a few months later. At first their relationship was good, but it started to deteriorate after about a year. Fry was peculiarly fastidious about the organization and cleanliness of their home and "it got to where [Fry] really had a need to have everything just perfect in the household." Defendant testified that Fry verbally and physically abused her. Fry did not approve of Defendant's smoking habit and told her she was getting too fat. Fry would choke her, pull her hair, and push her face.

Fry was a gun enthusiast who kept loaded guns around the house. He would take them out, load and unload them, and point the laser sight at different things. He pointed the laser sight at Defendant's forehead and chest, which scared her. The abuse also included repeated instances where Fry would coerce Defendant into

engaging in sexual activity with him and other, older men. Defendant suffered from depression and, at one point, attempted suicide.

On 11 December 2015, Defendant returned home from work to find Fry in their basement. Three guns were also in the basement—two handguns and a 12-gauge shotgun. Fry asked Defendant to go with him to South Carolina to have sex with an older man. Defendant refused. She testified that Fry held a handgun to her chest, acted like he was pulling the trigger, and told her he would kill her if she did not go with him.

Defendant left the basement and went upstairs. When she returned to the basement, Fry was standing behind a couch, folding laundry. Defendant testified:

> He told me I am going to South Carolina, and he was making the reservations and he was calling me names. Then he told me that he was going to kill me if I didn't go. He reached over and grabbed where the gun was and he started towards me[.]

Defendant testified that she grabbed a shotgun that was up against the bathroom wall and "and started firing. The closer he came, the more I would shoot because he wouldn't stop, he just kept coming towards me." Defendant fired five rounds, hitting Fry four times. Two shots entered Fry's chest. Another two entered through Fry's left arm and armpit, traveling through his left lung and fracturing five ribs. Each shot required Defendant to reload or "rack" the shotgun. After each shot, she had to pull back on the shotgun's slide to load a new shell into the chamber, push the slide forward, and then pull the trigger.

The State's forensic pathologist testified that any one of the shots would have been enough to incapacitate and kill Fry. Three bullet holes from the shotgun's slugs were found in the carpet underneath Fry's body, suggesting that he was on the ground when Richardson shot him. Each of the four bullet wounds had a downward trajectory.

After she shot Fry, Defendant called 911 and told the operator that she had shot her boyfriend. Fry was pronounced dead shortly after paramedics arrived on the scene.

After a four-day trial, the trial court held a jury charge conference. During the conference, Defendant asked the trial court to instruct the jury with North Carolina Pattern Jury Instruction 206.10, which provides model instructions for first-degree murder, its lesser included offenses, and self-defense. The trial court agreed. The trial court also agreed to Defendant's request to omit from the pattern instruction any instructions about the aggressor doctrine. The State pointed out that there was no evidence to support an involuntary manslaughter instruction.

The trial court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, self-defense, voluntary intoxication, and diminished mental capacity. In giving the final mandate on voluntary manslaughter, the trial court omitted certain verbiage. After excusing the jury to commence its deliberations, the trial court asked, "[Does the] State have any additions or

corrections or modifications to the jury instructions?" The State answered, "No, sir." The trial court then asked, "Defendant?" Defendant responded, "No, Your Honor." The trial court thus announced, "Okay, very well. We will be at ease in this case."

## III. Discussion

Defendant's sole argument on appeal is that the trial court reversibly erred by omitting certain verbiage from the final mandate on voluntary manslaughter when the trial court charged the jury.

*A. Preservation and Standard of Review*

We first determine to what extent Defendant preserved this issue for our review.

Defendant argues that this issue is preserved for review, even though she did not object to the erroneous instruction before the trial court, because she requested at the charge conference that the trial court instruct the jury using N.C.P.I.—Crim. 206.10 and the trial court agreed to do so, but the trial court failed to accurately give the instruction.

Where a defendant has properly preserved her challenge to jury instructions, an appellate court reviews the trial court's decisions regarding jury instructions de novo. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). On appeal, a defendant is required not only to show that a challenged jury instruction was erroneous, but also that such error prejudiced the defendant. N.C. Gen. Stat. § 15A-

1442(4)(d) (2019). "A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2019).

The State argues this issue is only reviewable for plain error because Defendant did not object to the voluntary manslaughter instruction before the trial court.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "'resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted) (emphasis in original)).

Pursuant to our Rules of Appellate Procedure:

> A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to

which objection is made and the grounds of the objection; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

N.C. R. App. P. 10(a)(2).

However, our Supreme Court has recently stated, specifically on the issue of a self-defense instruction, as follows:

> Though the trial court here agreed to instruct the jury on self-defense under N.C.P.I.—Crim. 206.10, it omitted the "no duty to retreat" language of N.C.P.I.—Crim. 206.10 without notice to the parties and did not give any part of N.C.P.I.—Crim. 308.10, the "stand-your-ground" instruction. . . . The State nonetheless contends that defendant did not object to the instruction as given, thereby failing to preserve the error below and rendering his appeal subject to plain error review only.
>
> *When a trial court agrees to give a requested pattern instruction, an erroneous deviation from that instruction is preserved for appellate review without further request or objection.*
>
>> [A] request for an instruction at the charge conference is sufficient compliance with the rule to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.
>
> *State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988). Because the trial court here agreed to instruct the jury in accordance with N.C.P.I.—Crim. 206.10, its omission of the required stand-your-ground provision substantively deviated from the agreed-upon pattern jury instruction, thus preserving this issue for appellate review under [N.C. Gen. Stat.] § 15A-1443(a).

*State v. Lee*, 370 N.C. 671, 675-76, 811 S.E.2d 563, 567 (2018) (emphasis and brackets added).

In *Ross*, upon which the *Lee* Court relied, "defendant requested, and the trial judge indicated he would give, a jury instruction concerning defendant's decision not to testify in his own defense at trial. Yet, . . . the trial judge neglected to give the requested and promised jury instruction." *Ross*, 322 N.C. at 264, 367 S.E.2d at 891. This Court "note[d] at the outset that the trial judge's failure to give the requested and promised instruction [was] properly before [the Court] on appeal despite defendant's failure to object prior to the commencement of the jury's deliberation[,]" despite defendant's "fail[ure] to embrace a final, explicit opportunity provided by the trial judge for remaining comments on the jury instructions[,]" and notwithstanding the fact that "Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides that no party may assign as error any portion of the jury charge or omission therefrom unless he enters an objection before the jury retires to consider its verdict." *Id.* at 264-65, 367 S.E.2d at 891.

In concluding that defendant's issue was properly preserved for review, the Court relied upon the then-recent case of *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987), in which it "held that a request for an instruction at the charge conference is sufficient compliance with the rule to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any

failure to bring the error to the trial judge's attention at the end of the instructions." *Ross*, 322 N.C. at 265, 367 S.E.2d at 891.

In *Pakulski*, "[d]uring the instruction conference, defense counsel asked the court to give the pattern instruction on prior inconsistent statements (N.C.P.I.—Crim. 105.20)." *Pakulski*, 319 N.C. at 574, 356 S.E.2d at 327. "The judge then stated, 'If I overlook that, call it to my attention. I don't think I will.'" *Id.* "The court never gave the requested instruction" and "the omission was not called to the court's attention prior to jury deliberations." *Id.* The Court concluded that the issue was preserved for review under N.C. Gen. Stat. § 15A-1443 because "defense counsel complied with the spirit of Appellate Rule 10(b)(2)" by "request[ing] an instruction on impeaching a witness with a prior inconsistent statement." *Id.* at 575, 356 S.E.2d at 327.

In *Lee*, *Ross*, and *Pakulski*, the error our Supreme Court determined to be preserved under Appellate Rule 10 solely by defendant's request for a specific jury instruction was the trial court's complete failure to give the requested jury instruction. Accordingly, when a trial court agrees to give a requested instruction, an "erroneous deviation from that instruction" occurs when the trial court fails to give the requested instruction. *Lee*, 370 N.C. at 676, 811 S.E.2d at 567. Thus, under *Lee*, it is the trial court's failure to give the agreed-upon instruction that is "preserved for appellate review without further request or objection." *Id.*; *see State v. Gordon*, 104

N.C. App. 455, 458, 410 S.E.2d 4, 7 (1991) (Defendant's challenge to the manner in which the trial court instructed the jury on self-defense was not preserved by her request for the self-defense instruction, and the trial court's indication that it would give the pattern instruction, because a defendant's request for a pattern instruction preserves a challenge only to "the failure of the trial judge to give [that] instruction at all.").

Here, Defendant requested that the trial court instruct the jury pursuant to N.C.P.I.—Crim. 206.10, which includes the relevant provision on voluntary manslaughter. The trial court agreed to instruct the jury accordingly. The trial court instructed the jury pursuant to N.C.P.I.—Crim. 206.10, including instructing on voluntary manslaughter. However, the trial court omitted certain verbiage from the instruction when giving the final mandate to the jury on voluntary manslaughter. As the trial court did not completely fail to give the agreed-upon instruction, Defendant's argument that the trial court erroneously delivered the mandate was not "preserved for appellate review without further request or objection." *Lee*, 370 N.C. at 676, 811 S.E.2d at 567. As Defendant did not object when the instruction was given, and "failed to embrace a final, explicit opportunity provided by the trial judge for remaining comments on the jury instructions," *Ross*, 322 N.C. at 264, 367 S.E.2d at 891, Defendant has failed to preserve this issue for review under N.C. Gen. Stat. § 15A-1443.

However, Defendant, in an alternative argument, "specifically and distinctly" contended the trial court's erroneous jury instruction amounted to plain error. Thus, we may analyze the issue for plain error. N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."). We nevertheless note that, under both the review described in N.C. Gen. Stat. § 15A-1443 and plain error review, Defendant has failed to show reversible error.

*B. Analysis*

"When analyzing jury instructions, we must read the trial court's charge as a whole." *State v. Fowler*, 353 N.C. 599, 624, 548 S.E.2d 684, 701 (2001). "We construe the jury charge contextually and will not hold a portion of the charge prejudicial if the charge as a whole is correct." *Id.* "If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal." *State v. McWilliams*, 277 N.C. 680, 685, 178 S.E.2d 476, 479 (1971) (citation omitted).

The trial court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, self-defense, voluntary intoxication, and diminished mental capacity. Near the beginning of the charge, the trial court instructed, "The State must prove to you that the defendant is guilty beyond a

reasonable doubt." After instructing the jury on the definition of each theory of guilt

and of self-defense, the trial court then specifically instructed, "The defendant would

not be guilty of any murder or manslaughter if the defendant acted in self-defense

and did not use excessive force under the circumstances." Later in the charge, the

trial court instructed the jury as follows:

> If the State fails to prove that the defendant did not act in self-defense, you may not convict the defendant of either first- or second-degree murder; however, you may convict the defendant of voluntary manslaughter if the State proves that the defendant used excessive force.

After instructing the jury on the elements of first-degree murder and second-

degree murder, the trial court instructed the jury on the elements of voluntary

manslaughter, as follows:

> For you to find the defendant guilty of voluntary manslaughter, the State must prove three things beyond a reasonable doubt: first, that the defendant killed the victim by an intentional and unlawful act; second, that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred. And third, that the defendant did not act in self-defense, or though acting in self-defense used excessive force. Voluntary manslaughter is also committed if the defendant kills in self-defense but uses excessive force.
>
> The burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense; however, if the State proves beyond a reasonable doubt that defendant, though otherwise acting in self-defense, used excessive force, the defendant would be guilty of voluntary manslaughter.

This instruction accurately followed N.C.P.I.—Crim. 206.10, for voluntary manslaughter. However, in its final mandate for voluntary manslaughter, the trial court instructed the jury as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally wounded the alleged victim with a deadly weapon and thereby proximately caused the alleged victim's death, it would be your duty to find the defendant guilty of voluntary manslaughter, even if the State has failed to prove that the defendant did not act in self-defense.

As the State concedes, this instruction was erroneous. Pursuant to N.C.P.I.—Crim. 206.10, the instruction should have been given as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant intentionally wounded the victim with a deadly weapon and thereby proximately caused the victim's death, *and that the defendant . . . used excessive force*, it would be your duty to find the defendant guilty of voluntary manslaughter even if the State has failed to prove that the defendant did not act in self-defense.

N.C.P.I.—Crim. 206.10 (2018) (emphasis added).

Shortly after the erroneous instruction, the trial court instructed the jury as follows:

> And finally, if the State has failed to satisfy you beyond a reasonable doubt that the defendant did not act in self-defense or that the defendant used excessive force, then the defendant's action would be justified by self-defense, and therefore, it would be your duty to return a verdict of not guilty.

Although the trial court erroneously omitted the verbiage "*and that the defendant . . . used excessive force*" from the voluntary manslaughter final mandate, the trial court correctly instructed the jury on three separate occasions during the charge on the State's burden to prove Defendant's use of excessive force for the jury to find Defendant guilty of voluntary manslaughter. Moreover, on two other occasions during the charge, including once after the erroneous voluntary manslaughter final mandate was given, the trial court correctly instructed the jury that it should return a verdict of not guilty if defendant acted in self-defense and did not use excessive force. We thus conclude that the trial court's instructions, read as a whole, adequately presented the law of voluntary manslaughter fairly and clearly to the jury, and the isolated mistake, standing alone, affords no ground for reversal. *McWilliams*, 277 N.C. at 685, 178 S.E.2d at 479.

The trial court's error is similar to the one made in *State v. Baker*, 338 N.C. 526, 564, 451 S.E.2d 574, 597 (1994). In *Baker*, the trial court properly instructed the jury on the State's burden of proof for the charges of murder, common law robbery, and first-degree kidnapping. *Id.* at 564-65, 451 S.E.2d at 597. However, after instructing the jury properly on the kidnapping charge, the trial court concluded as follows: "However, if you do not so find, or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of *guilty*." *Id.* at 564, 451 S.E.2d at 597 (emphasis added).

Our Supreme Court concluded this error was not prejudicial, explaining that

> [t]his Court has repeatedly held that a lapsus linguae not called to the attention of the trial court when made will not constitute prejudicial error when it is apparent from a contextual reading of the charge that the jury could not have been misled by the instruction. In the instant case, the trial court repeatedly instructed the jury that the State had the burden of proving defendant was guilty beyond a reasonable doubt. The court also instructed that "[a]fter weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty." In addition, in its instructions on murder and common-law robbery, the court stated that if the jurors did not find each element had been shown, it would be their duty to return a verdict of not guilty. Reading the charge in its entirety, we are convinced the jurors could not have been misled by the omission complained of.

*Id.* at 565, 451 S.E.2d at 597 (internal citation omitted).

As in *Baker*, the trial court here repeatedly instructed the jury that the State had the burden of proving Defendant was guilty beyond a reasonable doubt, including when it instructed in detail on voluntary manslaughter, and emphasized that, if the jury did not find each element of the charge had been proven beyond a reasonable doubt, it must find Defendant not guilty. Thus, as in *Baker*, when "[r]eading the charge in its entirety, we are convinced the jurors could not have been misled by the omission complained of." *Id.*

The facts of the present case are distinguishable from those in *State v. Hunt*, 192 N.C. App. 268, 664 S.E.2d 662 (2008).[1]  In *Hunt*, the trial court properly instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter.  *Id.* at 270, 664 S.E.2d at 664.  However, the instruction on voluntary manslaughter included the following misstatement:

> Now, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in the heat of passion upon adequate provocation, but rather that he acted with malice.  If the *defendant* fails to meet this burden, the defendant can be guilty of no more than voluntary manslaughter.

*Id.* at 271, 664 S.E.2d at 664 (emphasis added).  Although the trial court first properly instructed the jury that the burden of proof was on the State, it incorrectly instructed the jury in the next sentence that the burden was on the defendant.  *Id.*

"Shortly after deliberation began, the jury returned to the court and requested 'a list of requirements for [second] [d]egree [m]urder and [two] [m]anslaughters.'"  *Id.* (alterations in original).

> The trial judge asked the court reporter to type up the original oral instructions as to those charges and give each juror a copy of the instructions.  The instructions given to the jury included the misstatement on the instruction of

---

[1] Defendant relies on *State v. Hamilton*, No. COA14-1005, 2015 N.C. App. LEXIS 181 at *1 (N.C. Ct. App. 2015) (unpublished), in support of her argument that the erroneous instruction was reversible error.  "An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority.  Accordingly, citation of unpublished opinions in briefs . . . in the trial and appellate divisions is disfavored[.]"  N.C. R. App. P. 30(e)(3).  As *Hunt* has similar facts and a similar analysis to *Hamilton*, we distinguish the case before us from *Hunt*.

- 16 -

voluntary manslaughter. The jury ultimately convicted defendant of second[-]degree murder.

*Id.* On appeal, this Court was "unable to conclude that the instructional error did not have a probable impact on the jury's finding of guilt[,]" explaining,

> [t]his is not a case with a singular misstatement where the trial court repeatedly instructed the jury that the State had the burden of proving that defendant was guilty beyond a reasonable doubt. Nor is this a case where the trial court made a misstatement of law which was preceded by several correct instructions. Instead, the trial court made a misstatement as to the burden of proof for the voluntary manslaughter charge and then provided that same misstatement to the jury in writing, along with the correct second[-]degree murder and involuntary manslaughter charges.

*Id.* (internal quotation marks and citations omitted).

Unlike the instructions in *Hunt*, the instructions at issue in this case included a "singular misstatement," *id.*, after the trial court repeatedly instructed the jury that the burden of proof was on the State to prove every element of the charge beyond a reasonable doubt. Moreover, the record before this Court does not indicate that the trial court provided the misstatement to the jury in writing. Although the trial court indicated that it would give the jurors a copy of the instructions for their deliberations, it is apparent from the transcript, and Defendant does not argue otherwise,[2] that the trial court intended to give jurors a copy of the written

_____

[2] The record does not contain a copy of the jury instructions provided to the jurors. "The record on appeal in criminal actions shall contain . . . copies of all other papers filed . . . in the trial courts

instructions as agreed upon by the parties, not a copy of the transcribed oral instructions given in the jury charge. *Hunt* is distinguishable, and we are bound by *Baker*.

## IV. Conclusion

The trial court's instructions, read as a whole, adequately presented the law of voluntary manslaughter fairly and clearly to the jury. We thus discern no plain error.

NO PLAIN ERROR.

Judges ARROWOOD and HAMPSON concur.

---

which are necessary for an understanding of all issues presented on appeal[. . . .]" N.C. R. App. P. 9(a)(3)(i). "It is the appellant's duty and responsibility to see that the record is in proper form and complete." *State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644-45 (1983).